```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ANNA HUNTER o/b/o E.J.,         :     CIVIL ACTION
                                :     NO. 10-3036
     Plaintiff,                 :
                                :
     v.                         :
                                :
MICHAEL J. ASTRUE,              :
                                :
     Defendant.                 :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              AUGUST 9, 2011


**I.   INTRODUCTION**

Plaintiff Anna Hunter ("Plaintiff") brings this social security review action on behalf of her minor son E.J., who was denied benefits following a January 5, 2009 hearing before an Administrative Law Judge ("ALJ"). Plaintiff argues that E.J. is entitled to benefits because his impairments are functionally equivalent to a listed impairment due to marked limitations in (1) interacting and relating with others; and (2) caring for yourself. The Commissioner disagrees, urging that the ALJ's determination to the contrary is supported by substantial evidence.

As set forth below, Plaintiff's request for review will be denied and the ALJ's decision affirmed.

**II.  DISCUSSION**

Broadly speaking, an ALJ uses a three-part analysis to determine whether a child is disabled for the purpose of receiving social security benefits.  See <u>Valez ex rel. J.M.A. v. Astrue</u>, No. 10-2681, 2011 WL 1248707, at *1 (E.D. Pa. Feb. 4, 2011), <u>report and recommendation adopted</u>, 2011 WL 1235596 (E.D. Pa. Apr. 4, 2011).  First, the ALJ considers whether the child is working.  <u>See</u> 20 C.F.R. § 416.924(b).  Next, the ALJ considers whether the child has a medically determinable severe impairment or combination of impairments.  <u>See</u> <u>id.</u> § 416.924(c).  Finally, the ALJ considers whether the child's impairments "meet, medically equal, or functionally equal [an impairment in] the listings."  <u>See</u> <u>id.</u> § 416.924(d).

    A.   <u>The ALJ's Decision</u>

Applying the first two steps of this analysis, the ALJ found that E.J. had never engaged in substantial gainful activity, and had three medically determinable severe impairments.[1]  (R. 25.)  As to the third step, the ALJ concluded that E.J.'s impairments did not meet or medically equal an impairment cited in the listings.  (<u>Id.</u>)  Therefore, the ALJ analyzed whether E.J.'s medically determinable severe impairments

---

[1]  Namely, (1) attention deficit hyperactivity disorder; (2) a learning disorder; and (3) a mood disorder.

2

or the combination thereof functionally equaled a listed impairment. See Valez, 2011 WL 1248707, at *1 ("Where a child does not meet or equal a listing criteria, his impairment can be found to be <u>functionally equivalent</u> to a listed impairment . . . .").

This inquiry, as the ALJ accurately summarized, requires consideration of the claimant's functioning in six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1).  A child's impairments functionally equal a listed impairment if the child has a "marked" limitation in two domains or an "extreme" limitation in any one of the six. See id. § 416.926a(a).  Evaluating the record before her, the ALJ concluded that E.J. had less than marked limitations in four of the six domains, and no limitation in two.[2]  Consequently, the ALJ determined that E.J. was not entitled to benefits.

B.  <u>Analysis</u>

Plaintiff does not challenge the majority of the ALJ's

---

[2] The ALJ found that E.J. had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself.  The ALJ found no limitations in moving about and manipulating objects or health and physical well-being.

findings and conclusions. Instead, Plaintiff simply argues that the ALJ erred in finding that E.J. has less than marked limitations in (1) interacting and relating with others; and (2) caring for yourself. According to Plaintiff, E.J. is entitled to an award of benefits because he has marked limitations in both domains.

       1.    Standard of Review

In considering Plaintiff's arguments, the Court's role is limited; it may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings presented in order to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently. See Hartranft v. Apfel, 181

4

F.3d 358, 360 (3d Cir. 1999); see also Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))).

        2.    Application

As noted, Plaintiff contends that E.J.'s impairments functionally equal a listed impairment because E.J. has marked limitations in two of the six domains. A marked limitation is defined as a limitation "that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). It exists "in a domain when [a child's] impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities," id., as compared to other children without the claimant's impairments, see id. § 416.926a(f)(1) ("When we consider whether you have 'marked' . . . limitations in any domain, we . . . compare your functioning to the typical functioning of children your age who do not have impairments.").

        a.    Interacting and relating with others

Plaintiff first argues that the ALJ erred in finding that E.J. has a less than marked limitation in interacting and relating with others.

In analyzing this domain, the ALJ considers how well the claimant can "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  The regulations provide that a claimant E.J.'s age should be able to:  initiate and develop friendships; relate appropriately to others; solve conflicts that arise; recognize that there are different social rules applicable to friends and to acquaintances or adults; and express feelings. See id. § 416.926a(i)(2)(v).  Examples of limited functioning in this domain include:  not having any close friends; withdrawing from people; being overly anxious or fearful of meeting new people; having difficulty playing games or sports; and having difficulty communicating or speaking intelligibly.  See id. § 416.926a(i)(3).

Applying this standard, the ALJ found that E.J. had impairments in interacting and relating with others that were less than marked:

> The claimant does not behave well at school and is frequently aggressive to others.  However, his mother has reported that he has friends and is able to make new friends (Exhibit 3E).  The claimant's sixth grade teacher reported no serious problems in this area (Exhibit 4E).
>
> The claimant brought a toy gun to school in December 2007 and was subsequently hospitalized after making suicidal threats (Exhibit 15F).  However, the

>claimant's behavior is apparently currently more stable
>and there is no evidence of any current suspensions
>(Exhibit 12F).  He does participate in team sports.
>The claimant's family life has frequently been somewhat
>chaotic and he fights frequently with his brothers; it
>is unclear if this behavior is significantly different
>from typical fights among siblings.
>
>   The Administrative Law Judge concurs with the
>State agency psychological consultant and finds that
>the claimant suffers from less than marked limitations
>in this domain.

(R. 27-28.)  Plaintiff contends the ALJ's determination in this regard is erroneous, citing evidence that tends to undermine the ALJ's assertion that E.J.'s behavior has been better since his December 2007 hospitalization.

First, Plaintiff takes issue with the ALJ's characterizations of E.J.'s school records, pointing to evidence that shows E.J. has actually been suspended recently.  (See R. 33.)  In addition, Plaintiff cites E.J.'s recent school records, which demonstrate a pattern of misbehavior in school during the semester immediately preceding the hearing before the ALJ.  The records show that E.J. was written up twice in September 2008, once in October 2008, and three times in November 2008.  (R. 231.)  Amongst other things, E.J. was cited for anger problems following a verbal dispute with another student; poor behavior after displaying a poor attitude towards completing a project; and disrupting class.  (Id.)

Second, Plaintiff surveys E.J.'s progress notes from his mental health treatment program, claiming they "confirm that

7

E.J. continued to have behavioral issues after his December 2007 hospitalization." (Pl.'s Br. at 9-10.)  The notes reflect some degree of behavioral problems following E.J.'s hospital discharge.  For example, E.J. admitted to stealing in February 2008.  (R. 347.)  The notes also demonstrate behavioral issues at school.  In March 2008, E.J. reported to his therapist that he had been suspended two days from school.  (R. 344.)  In May 2008, E.J. admitted that he cursed at and punched a peer following an altercation.  (R. 337.)  Additionally, in November 2008, E.J. discussed a problem he was having with his football coach, expressing his opinion that the "solution to his problem is physical and verbal aggression."  (R. 327.)

However, while the evidence upon which Plaintiff relies clearly shows limitations in interacting and relating with others, substantial evidence supports the ALJ's determination that E.J.'s limitations in this regard are less than marked.  The ALJ's decision demonstrates that the ALJ considered the relevant evidence, and simply concluded that E.J.'s impairments were not marked notwithstanding the behavioral issues he has had in the past.  Indeed, as the ALJ's decision states, Plaintiff reported that E.J. had friends and was able to make new friends.  (See R. 113.)  Plaintiff also reported that E.J. generally gets along with adults and school teachers, and plays team sports.  (Id.) E.J.'s school teacher's report, also cited by the ALJ, is to the

same effect, indicating only less than serious problems with respect to E.J.'s ability to interact and relate with others. (See R. 130.)  So too is the report of Dr. Gavazzi, the State agency psychological consultant upon whom the ALJ depended and accorded "great weight."  (R. 26.)  Although Dr. Gavazzi noted "some social difficulties" and E.J.'s "history of impulsive behavior," he found that E.J. had improved with treatment and concluded that E.J. had less than marked limitations in interacting and relating with others.  (See R. 227.)

Dr. Gavazzi's determination that E.J. had improved with treatment, which the ALJ also found upon review of the record, is amply supported in the record.  Indeed, while E.J.'s progress notes illustrate his behavioral problems, they also show his continued improvement.  For example, when E.J. admitted to stealing, he also expressed that he was disappointed in himself for engaging in such behavior.  (See R. 347.)  E.J. expressed remorse and indicated a desire to continue to work to improve his behavior on other occasions, too.  (See R. 341 (April 2008 progress note describing E.J.'s admission that he was disrespectful to a teacher, but stating that E.J. "appears to be concerned about controlling anger" and "noting he "want[s] to remain in treatment so he doesn't 'lose it'"); R. 328 (stating that E.J. "[a]ppeared disappointed in himself for yelling at the teacher").)  E.J.'s improvement is not only evidenced by his

desire to work to solve his problems; it is also explicitly described in his progress notes.  In March 2008, for example, Plaintiff's therapist reported that E.J. was engaged and open minded, observing that his "frustration tolerance appears to be improving significantly."  (R. 342.)

Thus, the record as a whole supports the ALJ's finding that E.J. has less than marked limitations in interacting and relating with others.  While the evidence might have persuaded the Court to rule differently in the first instance, the reasons proffered by the ALJ for finding otherwise are sufficient to support the ALJ's conclusion.  See Rutherford, 399 F.3d at 552.  Given this disposition, consideration of Plaintiff's challenge to the ALJ's determination of E.J.'s limitation in caring for yourself is unnecessary.  See 20 C.F.R. § 416.926a(a) (stating that a child's impairments functionally equal a listing only if the child has a marked limitation in two of the domains or an extreme limitation in one of the six).  Nevertheless, in the interest of completeness, the analysis that follows addresses Plaintiff's arguments concerning caring for yourself.

      b.   Caring for yourself

Next, Plaintiff argues that the ALJ incorrectly determined that E.J. has less than marked limitations in caring for yourself.

In this domain, the ALJ considers how well the claimant can "maintain a healthy emotional and physical state," how the claimant "cope[s] with stress and changes in [his or her] environment," and whether the claimant "take[s] care of [his or her] own health, possessions, and living area."  20 C.F.R. § 416.926a(k).  The regulations provide that a claimant E.J.'s age should:  feel more independent in their day-to-day activities; be able to discover appropriate ways to express his or her feelings; and think seriously about future plans.  See id. § 416.926a(k)(2)(v).  Examples of limited functioning in this domain include:  not dressing or bathing appropriately; engaging in self-injurious behavior; not pursuing enjoyable activities or interests; and disturbances in sleeping or eating habits.  See id. § 416.926a(k)(3).

Here, despite E.J.'s psychiatric hospitalization due to suicidal threats, the ALJ found that E.J. had less than marked limitations in caring for yourself:

> Although the claimant has age appropriate self-care skills, he has demonstrated some emotional difficulty in dealing with family life issues.  He has a history of impulsive behavior and was hospitalized because of suicidal threats; however, the record shows that he has improved with treatment (Exhibits 15F, 16F).
>
> The Administrative Law Judge finds that the claimant suffers from less than marked limitations in this domain.

(R. 28.)  Plaintiff argues the ALJ erred in so finding, urging

11

that E.J. has not improved with treatment.

As noted in the context of interacting and relating with others, however, substantial evidence supports the ALJ's decision to the contrary. And, as it pertains to those characteristics not relating to mental health, the record plainly supports the ALJ's finding that E.J. has less than marked limitations in caring for yourself. For example, Plaintiff's mother reported that Plaintiff was able to care for his personal hygiene, wash and put away his clothes, help around the house, cook for himself, get to school on time, and take needed medications. (See R. 114.) E.J.'s school teacher report notes no serious problems in the domain, observing no problems whatsoever in cooperating in taking medications, and using good judgment regarding personal safety and dangerous circumstances. (R. 132.) In addition, E.J. testified at the hearing that he aspires to go to college and wants to play football or basketball. (See R. 63.)

Thus, like the ALJ's finding as to interacting and relating with others, the ALJ's determination that E.J. has less than marked limitations in caring for yourself is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court will deny

Plaintiff's request for review and affirm the ALJ's finding.  An appropriate Order will follow.